**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-04085-NRN

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION, a federally recognized
Indian tribe,

*Plaintiff,*

v.

JARED POLIS, Colorado Governor,
in his official capacity;

DAN GIBBS, Executive Director, Colorado Department
of Natural Resources, in his official capacity;

LAURA CLELLAN, Director, Colorado Division of Parks & Wildlife,
in her official capacity,

*Defendants*.

---

OPPOSITION TO MOTION TO DISMISS

---

Governor Polis seeks dismissal on Eleventh Amendment grounds, asserting he lacks a sufficient enforcement connection to the challenged statute and that *Ex parte Young* does not apply. The Motion should be denied. Plaintiff challenges the ongoing enforcement of C.R.S. § 33-12-103.8 as unconstitutional and preempted and seeks prospective declaratory relief against state officials responsible for the statute's implementation. The Governor is the State of Colorado's chief executive, is sued in his official capacity for prospective relief, and is properly joined with agency officials. The Motion's facial attack cannot overcome the well-pleaded allegations that the statute continues to be applied today and that state officials, including the Governor, maintain the

regime Plaintiff challenges. At minimum, any jurisdictional ruling should await targeted jurisdictional discovery and permit amendment.

BACKGROUND

Plaintiff is a federally recognized Indian tribe that brought suit against Governor Jared Polis ("Governor"), the Executive Director of the Colorado Department of Natural Resources ("DNR") Dan Gibbs, and the Director of the Colorado Division of Parks & Wildlife (the "Division") Laura Clellan, in their official capacities, challenging C.R.S. § 33-12-103.8, which exempts enrolled citizens of the Southern Ute Indian Tribe and Ute Mountain Ute Tribe from state-park entry fees but does not extend the same exemption to Plaintiff's citizens.

The legal allegations in the Complaint, set out extensively throughout (*See* Complaint ¶¶ 48-162), are that the State is violating the following: the Brunot Agreement of 1874 (Count I), Plaintiff's Equal Protection rights under the Fourteenth Amendment by infringing on a fundamental right to the free exercise of Plaintiff's religion (with Dormant Commerce Clause implications under the Article I of the United States Constitution) (Count II), Plaintiff's Equal Protection rights under the Fourteenth Amendment through unlawfully discriminating against Plaintiff (Count III), Plaintiff's Free Exercise rights under the First Amendment (Count IV), and Plaintiff's First and Fourteenth Amendment Rights under color of state law in violation of 42 U.S.C. §1983 (Count V).

On April 10, 2026, the Governor filed a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) ("Motion") bringing a facial challenge to the sufficiency of the Complaint's allegations as to subject matter jurisdiction. DNR and the Division have answered the Complaint. On April 30, 2026, the Court granted a stay of discovery as to all parties pending resolution of this Motion. Dkt. #48.

## LEGAL STANDARD

A Rule 12(b)(1) facial challenge presumes the Complaint's well-pleaded allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Governor states he brings a facial Eleventh Amendment attack and that the Court must presume the Complaint's allegations to be true at this stage.

## ARGUMENT

### I. *Ex parte Young* permits Plaintiff's official-capacity claim for prospective relief to proceed against the Governor

*Ex parte Young* ensures that the U.S. Constitution is the supreme law of the land. The Court in *Ex parte Young* established that officials of the state cannot claim state sovereign immunity when they are enforcing an act that violates the U.S. Constitution.

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. *Ex parte Young*, 209 U.S. 123, 159-160 (1908).

Under this principle, a state official who is enforcing an act that violates the U.S. Constitution cannot claim state sovereign immunity as a defense for official capacity claims seeking prospective, nonmonetary relief.

#### A. Plaintiff alleges an ongoing violation and seeks prospective relief

Here, Plaintiff challenges continuing enforcement and application of C.R.S. § 33-12-103.8 as unconstitutional and preempted, and seeks forward-looking declaratory relief to remedy that

ongoing violation. Plaintiff alleges the statute, enacted in 2025, is being applied to grant fee-free park entry to enrolled citizens of the Southern Ute and Ute Mountain Ute Tribes while withholding that exemption from Plaintiff's citizens. Plaintiff seeks declaratory relief on preemption, Equal Protection, Free Exercise, and § 1983 grounds. That posture squarely fits the Ex parte Young framework for prospective relief against state officials sued in their official capacity.

**B. The Governor has a sufficient connection to the enforcement of the Statute to come within the *Ex parte Young* exception**

The Motion argues that, because the Governor does not have a "particular duty" to enforce the challenged law, he is not subject to suit. Motion at 9. This is wrong.

To come within the *Ex parte Young* exception, state officials subject to suit must have "some connection with the enforcement of the act" alleged to be unconstitutional. *Ex parte Young*, 209 U.S. at 157. This duty, however, need not be "declared in the same act which is to be enforced" but "if it otherwise exists it is equally efficacious." *Id*. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id.*

This is the law in the Tenth Circuit, where "enforcement" of an act means "[t]o give effect" to it. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 & n.15 (10th Cir. 2007). A state actor may therefore be a proper defendant if he "assist[s] . . . in giving effect to the law" even if "not specifically empowered to ensure compliance with the statute at issue." *Id*. Under *Prairie Band*, "giving effect to" a statute does not mean the state official must "ensure compliance" with it, such as checking tribal identification cards and collecting the appropriate entry fees. *Id.*[1]

[1] For this reason, the motion's reliance on the Division's "'particular duty' of administering its state parks" is a red herring. Motion at 9. Whether or not the Division "ensures compliance with" or "administers" the statute distracts from the pertinent question of whether the Governor

Here, the Motion incorrectly asserts that the Governor has "no duty" to enforce the challenged law as that is a "particular duty" entrusted to the Division. Motion at 9.

First, this misrepresents the statute, which does not assign to the Division the duties the Motion ascribes to it. *See Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235, 1251 (10th Cir. 2025) ("If the language is plain and unambiguous, our inquiry must cease and the plain meaning of the statue controls.") (internal quotations omitted).

The only duties of the Division under the statute are found in section 4, which requires it to "conduct outreach to and engagement with [tribal governments and indigenous communities] on opportunities related to state parks that are managed by the Division" and to report on that outreach 33-12-103.8 (4) (a)-(b). Section 2 does not give the duty of enforcement of the statute to DNR, it merely declares what the law to be enforced is in relation to certain areas of geographical significance, i.e. "state parks that are managed by the Division." The statute does not say, as the Motion suggests, that the Division has any particular enforcement authority under the statute. It says that SUIT and UMU "are not required to pay a fee to enter state parks."[2] Stated otherwise, any person subject to the jurisdiction of the State must abide by the law.

This includes, but is not limited to, the Colorado Division of Motor Vehicles in collecting annual passes (C.R.S. § 33-12-108 (2026)); Colorado State Patrol officers with jurisdiction over all roads within the state, including those inside State parks (*See, e.g.* C.R.S. § 24-33.5-212(i) (2026) (establishing authority of Colorado state patrol officers to "[e]nforce all of the laws of this state with respect to grounds and buildings owned by the state or any agency or institution

---

assists in giving effect to the law such that he comes under the *Ex parte Young* exception to sovereign immunity.

[2] This is notable, particularly as the legislature knew how to explicitly give the Division duties under section 4 of the statute and chose not to do so in section 2.

thereof.")); and the Colorado Rangers that can also operate in State parks (C.R.S. § 16-2.5-153 (2026)). All of these agencies within the executive department of the state government are subject to varying degrees of oversight by the Governor, both in his role as the Supreme Executive of the State (Colo. Const. art. IV, § 2. *See also* *Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012); *Raven v. Polis*, 479 P.3d 918, 920 (Colo. 2021)), and by statute (*e.g.* C.R.S. § 24-1-128.6 (creating the Colorado Department of Public Safety, the head of which "shall serve at the pleasure of the governor.")).

Second, the statute at issue in this dispute is unique in that it seeks to implement the Brunot Agreement of 1874 and therefore must be viewed within and weighed against the "federal government's trust and treaty responsibilities." C.R.S. §33-12-103.8 (1)(a), (f). *Herrera v. Wyoming*, 587 U.S. 329, 344 (2019) ("If Congress seeks to abrogate treaty rights, 'it must clearly express its intent to do so.'") (*quoting Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 202 (1999)). Whatever the State's actual or apparent authority under the Brunot Agreement is, and the Governor's role, if any, in implementing the Brunot Agreement, will be the subject of discovery. The issues raised, however, only beg the questions of how the Governor's unique role as "Supreme Executive" of the State of Colorado within the federalist outlines of the United States Constitution apply here and how complete prospective relief would be possible without the Governor in his official capacity. For this reason, it appears that prospective relief against the Governor will be necessary to ensure complete and effective compliance with any declaratory judgment.

The Governor's reliance on *Hendrickson* and *Peterson* does not help him as each of those cases dealt with a statute giving exclusive enforcement authority to a specific state actor other than the one sought to be made a defendant. *Hendrickson v. AFSCME Council 18,* 992 F.3d 950, 968

(10th Cir. 2021) ("the statutory scheme vests enforcement power in the PELRB, a body independent of the Governor . . . ."); *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law.").

The fundamental premise of the Motion—that the statute gives a "particular duty" of enforcement to the Division—is wrong and, for this reason alone, the Motion should be denied.

Additionally, the Motion is incorrect in stating that the Governor "is not implicated" in enforcement of the challenged law. Motion at 9.[3] The discussion above alone surely is enough to satisfy *Ex parte Young's* requirement that the Governor has "some connection with the enforcement" of the statute. 209 U.S. at 157.

Even if, for the sake of argument, the statute gives a "particular duty" of enforcement to the Division, which it does not, the Governor's role vis-à-vis the DNR—the department within which the Division resides—would bring him in under the *Ex parte Young* exception to sovereign immunity.

The Governor appoints the executive director of the DNR (C.R.S. § 24-1-124) and may remove him or her with cause. *Id.* at § 34-21-102. The executive director "is empowered, *subject to the written approval of the governor*, to prescribe rules and regulations, *not inconsistent with law*, for . . . the distribution and performance of its business." *Id.* at §24-2-105 (emphasis supplied). The Governor's role in appointing and supervising executive leadership [and issuing executive direction pertinent to agency implementation, if any, to be added after jurisdictional discovery],

[3] The Governor speciously claims that his name appears "only twice in the Complaint." Motion at 9. In fact, the Governor is included in the designation "Defendants" under the Complaint, and "Defendants" (a term appearing thirty-eight times in the Complaint) are who Plaintiff alleges broke the law.

provides the requisite enforcement nexus for prospective relief in tandem with the Division and DNR even if, arguendo, the statute explicitly rests enforcement authority with the Division.

At a minimum, the Governor's supervisory authority over DNR and his duty to oversee executive compliance with law provide a "connection with the enforcement" sufficient at the pleading stage where the Complaint targets the State's ongoing application of the challenged statute. Any finer-grained parsing of lines of authority is premature on a facial 12(b)(1) motion that accepts the pleaded facts as true and draws reasonable inferences in Plaintiff's favor.

**C. The Governor's arguments do not defeat Ex parte Young at the pleading stage.**

The Motion's reliance on an assertedly "general" duty is misplaced at this stage. Whether the Governor's enforcement connection is overly "general" is, at most, a fact-bound question ill-suited to resolution on a facial record that presumes Plaintiff's allegations to be true, and where discovery can confirm the Governor's roles in executive oversight, appointments, policy direction, and coordination relevant to implementation. If the Court finds the current allegations insufficient as to the Governor's enforcement nexus, Plaintiff respectfully requests leave to amend after limited jurisdictional discovery targeted to the Governor's executive oversight and communications relating to C.R.S. § 33-12-103.8.

## II. In the alternative, the Court should defer ruling or grant leave to amend following limited jurisdictional discovery

If the Court concludes the present record is insufficient to determine the Governor's enforcement connection, Plaintiff requests narrowly tailored jurisdictional discovery concerning the Governor's supervisory authority, appointment, and direction of DNR leadership regarding C.R.S. § 33-12-103.8, executive communications or policies concerning implementation, and any role in intergovernmental coordination affecting application of the exemption. Plaintiff further requests leave to amend to conform the pleadings to the resulting record. Fed. R. Civ. P. 15(a)(2).

This approach avoids premature dismissal in a case already proceeding against DNR and the Division and preserves judicial economy.

## III. Plaintiff has Article III Standing

Initially, the Motion does not raise the issue of Article III standing. Plaintiff merely discusses it here with the understanding that the Court can seek supplemental briefing should it *sua sponte* seek additional information.

Article III standing requires three elements: (1) injury that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury complained of and the challenged action; and (3) redressability. *Rocky Mountain Wild v. Walsh*, 216 F. Supp. 3d 1234, 1243 (D. Colo. 2016).

Here, Plaintiff alleges concrete, particularized, and ongoing injury from the State's operation of a fee-exemption regime that disfavors Plaintiff's citizens when accessing Colorado state parks, causally linked to the challenged statute, and redressable by declaratory relief.

Plaintiff's legal allegations challenge "the enactment and enforcement of" C.R.S. § 33-12-103.8 because it affords free entry to citizens of the Southern Ute Indian Tribe and the Ute Mountain Ute Tribe but not to Plaintiff's citizens. As alleged, this causes concrete and particularized harm through, among other things, denying Plaintiff's citizens the ability to "freely practice their faith through, but not limited to, ceremonies, hunting, and prayer", (Complaint ¶ 148), rights guaranteed in the Brunot Agreement. *Id.* at ¶ 85. The Complaint seeks declaratory relief on constitutional and treaty-preemption theories.

Redressability and injury particulars will be further supported by the record. To the extent the Governor disputes them, that dispute goes to the merits or a factual 12(b)(1) challenge—which the Governor has not brought—and cannot be resolved on this facial Motion.

## CONCLUSION

The Court should deny Governor Polis's Rule 12(b)(1) Motion. In the alternative, the Court should allow limited jurisdictional discovery and grant leave to amend.

Respectfully submitted May 1, 2026

/s/ Jeremy J. Patterson
Jeremy J. Patterson
PATTERSON, REAL BIRD, AND RASMUSSEN LLP
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 926-5292
Facsimile: (303) 926-5293
Email: JPatterson@nativelawgroup.com

/s/ Ben Fenner
Ben Fenner
PATTERSON, REAL BIRD, AND RASMUSSEN LLP
601 Pennsylvania Avenue, NW
South Bldg., Suite 900
Washington, DC 20004
Telephone: (202) 434-8903
Facsimile: (202) 639-8238
Email: BFenner@nativelawgroup.com

*Attorneys for Plaintiff Ute Indian Tribe of the Uintah & Ouray Reservation*

## CERTIFICATE OF SERVICE

I certify that on May 1, 2026, I electronically served the foregoing Motion by filing it with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Dave Parent
Dave Parent